## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

TEWANNA SHAWN NAPIER,

       Debtor.

Filed / Docketed
February 4, 2008

Case No. 05-18209-M
Chapter 7

### MEMORANDUM OPINION

Americans have long been captivated by the prospect of weight loss.  We have gone to extremes in pursuit of the svelte figure, including but not limited to the use of medication.  One of the more popular "diet drugs" of the 1990s was a combination of phentermine and fenfluramine, more commonly known as "Phen-Fen."  In September of 1997, the Food and Drug Administration asked drug manufacturers to take Phen-Fen off of the market, noting mounting scientific evidence that Phen-Fen caused significant heart damage in those who used the drug.[1]  As one might expect, this led to a massive amount of litigation by individuals who used Phen-Fen.  Tewanna Shawn Napier, the debtor in this case ("Ms. Napier"), is one such person.

After using Phen-Fen, Ms. Napier developed heart problems.  She brought suit against the manufacturers of Phen-Fen.  After filing the litigation, she sought bankruptcy protection, but failed to disclose the existence of her Phen-Fen claim.  Years later, the litigation bore fruit in the form of a cash settlement.  The party paying the settlement required the blessing of the bankruptcy court before it would pay any money to Ms. Napier.  As a result, Ms. Napier reopened her case, disclosed the existence of the Phen-Fen litigation, and sought to claim the funds as exempt.  Steven W. Soulé, the Chapter 7 Trustee in the case ("Soulé"), has objected to the claim of exemption on the basis that Ms. Napier acted in bad faith when she concealed the Phen-Fen litigation.  Soulé contends that the

---

[1] *See*  http://www.fda.gov/cder/news/phen/fenphenpr81597.htm.

settlement proceeds should remain in the bankruptcy estate and be used to pay Ms. Napier's creditors. The task left for the Court is to determine who gets this money. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Civil Procedure 52, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[2]  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

## Findings of Fact

Ms. Napier used Phen-Fen as part of a diet regimen at some time prior to 2003, before the potential evils of the drug became known. After the perils of using Phen-Fen became known, Ms. Napier passed by a billboard advising users of the drug of their risk of heart damage and encouraging them to contact counsel and seek redress for damages. Ms. Napier called the telephone number on the billboard and was put in contact with the law firm of John M. O'Quinn and Associates ("O'Quinn"). On March 27, 2003, Ms. Napier entered into a "Power of Attorney and Contingent Fee Contract" (the "Fee Contract") with O'Quinn.[3] Ms. Napier read and signed the Fee Contract, initialing each and every page as she did so. Paragraph 11 of the Fee Contract, entitled "Bankruptcy Provisions," reads as follows:

> Client [Ms. Napier] represents to Attorneys [O'Quinn] that he or she is not presently filing, nor contemplating filing, for protection under the United States Bankruptcy

---

[2]  Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[3]  *Exhibit 2–10.*

Code.  Client agrees that in the event he or she files a petition in bankruptcy, Attorneys will be promptly notified of any such event and that the lawsuit or cause of action covered by this Power of Attorney and Contingent Fee Contract will be properly scheduled as an asset by the Client in accordance with the Bankruptcy Code and its rules of procedure.  Because a bankruptcy filing by Client could require Attorneys to engage special counsel or to otherwise perform legal services in addition to those services for which Attorneys were retained under this Power of Attorney and Contingent Fee Contract (*e.g.* special retentions by Client or Trustee; issues relating to waiver of privilege and assumption of executory contracts; application and payment of attorney's fees and approval of settlements; etc.), Client agrees that Attorneys shall be fully reimbursed by Client, or reimbursed out of Client's share of the recovery for the costs incurred for these extra services.  Unlike the litigation expenses referenced in Section VI above, Client agrees that any costs incurred by Attorneys in connection with a bankruptcy proceeding will be paid out of Client's share of the recovery.  Client expressly consents to Attorneys retaining such other special counsel and/or incurring such costs as reasonably necessary to address additional matters in bankruptcy as raised herein and such retention shall be considered a cost to be deducted from Client's share of the recovery.[4]

On March 22, 2004, O'Quinn filed a lawsuit against the makers of Phen-Fen on behalf of Ms. Napier in the Court of Common Pleas for Philadelphia County (the "Phen-Fen Action").  Ms. Napier was aware of the pendency of the Phen-Fen Action at all times after it was filed.

In 2005, Ms. Napier faced significant financial difficulties.  With the aid of a non-attorney friend, she filed a petition for relief under Chapter 7 of the Bankruptcy Code on October 12, 2005. The Phen-Fen Action was not listed as an asset in Ms. Napier's bankruptcy schedules, nor was its existence disclosed in her statement of financial affairs.  Both of these documents were signed by Ms. Napier under penalty of perjury as being true and correct to the best of her knowledge and belief.[5]  She claimed no property as exempt.  Soulé was appointed to serve as trustee in the case. The case was administered as a "no-asset" case.  Ms. Napier received an order of discharge on

---

[4] *Exhibit 2–15 - 16.*

[5] *See Docket No. 1.*

January 31, 2006, and the case was closed on February 16, 2006.

In 2007, O'Quinn advised Ms. Napier that a tentative settlement had been reached in the Phen-Fen Action, under the terms of which she would be entitled to receive the sum of $11,490.17. O'Quinn advised Ms. Napier that she would not receive any funds unless her bankruptcy case was reopened, the existence of the Phen-Fen Action disclosed, and the Phen-Fen Action abandoned by her bankruptcy trustee. On July 30, 2007, Ms. Napier filed a motion to reopen her bankruptcy case.[6] In this motion, Ms. Napier for the first time disclosed the existence of the Phen-Fen Action, and stated her intention to claim all settlement proceeds as exempt. The case was reopened, and Soulé was reappointed to serve as trustee. On August 30, 2007, O'Quinn informed Soulé of the existence of the Phen-Fen Action. On September 17, 2007, Ms. Napier filed an amended schedule of exemptions, claiming the proceeds from the Phen-Fen Action as exempt.[7] Soulé filed an objection to the claimed exemption on October 17, 2007.[8]

At the evidentiary hearing on this matter, Ms. Napier testified that she knew the Phen-Fen Action was pending when she filed her bankruptcy case. She claimed she did not initially schedule the Phen-Fen Action because she thought it had no value, and was unaware of the need to include the Phen-Fen Action in her schedules. She also stated that she had no idea at the time she filed her bankruptcy case that any proceeds from the Phen-Fen Action could be claimed as exempt. Ms. Napier admitted that she would not have filed the motion to reopen or disclosed the existence of the Phen-Fen Action had O'Quinn not instructed her to do so.

---

[6] *Docket No. 31.*

[7] *Docket No. 42.*

[8] *Docket No. 43.*

4

At all times relevant hereto, Ms. Napier has been employed as a hair stylist.  The Court heard no evidence regarding her educational background.  During her tenure on the witness stand, Ms. Napier portrayed herself as a capable, intelligent person.  She was able to read provisions of her bankruptcy schedules and the Fee Contract and demonstrate an understanding of these documents.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," such items are incorporated herein by this reference.

## Burden of Proof

In a recent decision, the United States Court of Appeals for the Tenth Circuit has held that "a trustee seeking to establish a debtor's bad faith in an exemption proceeding under § 522 must do so by a preponderance of the evidence."[9]  If a debtor claims that the failure to disclose the existence of an asset was inadvertent, "[t]he burden of establishing inadvertence lies with the debtor."[10]

## Conclusions of Law

As a general rule,

> Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate. *In Matter of Yonikus,* 974 F.2d 901, 904 (7th Cir. 1992). Generally, if a debtor intentionally conceals or fails to disclose estate property, the debtor will be barred from claiming such property as exempt, even if the property would have been exempt had it been properly scheduled and claimed. *See id.* at 871; *Matter of Doan,* 672 F.2d 831, 833 (11th Cir. 1982).[11]

Disclosure is an essential part of the bankruptcy process.  As one court has stated, "[t]he operation of the bankruptcy system depends on honest reporting.  If debtors could omit assets at will, with the

---

[9]   *In re Ford*, 492 F.3d 1148, 1155 (10th Cir. 2007).

[10]   *Id.* at 1156 (citation omitted).

[11]   *In re Wood*, 291 B.R. 219, 226 (1st Cir. BAP 2003).

only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive."[12]

The question before the Court is whether Ms. Napier acted in bad faith when she failed to list the Phen-Fen Action in her original bankruptcy petition and schedules.  Soulé claims that she acted in bad faith, while Ms. Napier claims that the failure to schedule the asset was a result of her ignorance of the duty of full disclosure, and/or due to her belief that, because she thought the Phen-Fen Action had no value, it need not be disclosed.   Whether Ms. Napier acted in bad faith is a question of fact.[13]  "Bad faith may be established by circumstantial evidence, or by inferences drawn from a course of conduct."[14]  Rarely, if ever, does a party accused of acting improperly confess to his or her malfeasance.

There is significant circumstantial evidence in the record to support a finding that Ms. Napier acted in bad faith when she failed to disclose the Phen-Fen Action in her original schedules and statement of affairs.  Ms. Napier admits that she read and signed the Fee Contract. In it, she agreed and acknowledged that, were she ever to file a petition in bankruptcy, "the lawsuit or cause of action covered by this Power of Attorney and Contingent Fee Contract will be properly scheduled as an asset by the Client [Ms. Napier] in accordance with the Bankruptcy Code and its rules of procedure."[15]  This statement in the Fee Contract is in simple layman's terms.  It is easy to understand.  There is nothing in the record to indicate that its meaning or importance was somehow

---

[12] *Sheehan v. Lincoln Nat. Life,* 257 B.R. 449, 453 (N.D.W.Va. 2001).

[13] *In re Ford*, 492 F3d at 1156.

[14] *Id.* (citation omitted).

[15] *Exhibit 2–15.*

lost upon Ms. Napier.

Ms. Napier admits that she was aware of the Phen-Fen Action when she filed her bankruptcy case. The obligations of full disclosure are also clearly set forth in the forms used in the creation of bankruptcy schedules and statements of financial affairs. The instructions to Schedule B, the schedule which lists all of a debtor's personal property, clearly state that a debtor is to "list all personal property of the debtor of whatever kind."[16] The schedules were signed by Ms. Napier under penalty of perjury, wherein she affirmed that they were "true and correct to the best of [her] knowledge, information, and belief."[17] Question 4 of the statement of financial affairs requires a debtor to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case."[18] The requirement is simple and straightforward, and Ms. Napier answered the question in the negative, again under penalty of perjury.[19] Only when she was made aware that she could not receive any settlement proceeds unless the Phen-Fen Action was disclosed in her bankruptcy case did she come forward. From these facts, an inference can easily be drawn that Ms. Napier was aware of her duty to disclose the Phen-Fen Action in her bankruptcy, and chose not to do so in an effort to ensure that any settlement proceeds would be given to her, and not to her bankruptcy trustee.

Counsel for Ms. Napier argues she did not act in bad faith, and that the failure to disclose was simply an honest mistake. The United States Court of Appeals for the Tenth Circuit has

---

[16] *See Docket No. 1* at 4.

[17] *Id.* at 18.

[18] *Id.* at 20.

[19] *Id.* at 29.

"recognize[d] that an inadvertent omission may be an affirmative defense to a debtor's failure to disclose an asset in bankruptcy.  Inadvertence can be established by showing, among other things, either (1) the debtor had no knowledge of the undisclosed asset, or (2) the debtor had no motive to conceal it."[20]  Ms. Napier falls within neither of these safe harbors.  She admits that she knew about the Phen-Fen Action when she filed her bankruptcy petition.  Moreover, she had ample motive not to disclose its existence.  The Phen-Fen Action was her primary asset.  She had no idea that she may have the right to retain proceeds from the Phen-Fen Action under a claim of exemption.  Disclosure of the asset carried with it the prospect of its loss.  Surely this could inspire someone to keep quiet and hope.

The Court concludes that Soulé has met his burden, albeit with circumstantial evidence.  The record supports a finding that Ms. Napier knew, both at the time she entered into the Fee Contract and at the time she filed her initial bankruptcy schedules and statement of affairs, of the existence of the Phen-Fen Action and her duty to disclose it.  She had no idea that any proceeds of the Phen-Fen Action could be claimed as exempt, which creates for her a motive to conceal the existence of the claim.  The claim was disclosed only after it became clear that disclosure was the only possible way for Ms. Napier to receive any money from the Phen-Fen Action.  Her claims of naivete pale by comparison.  The Court finds that Ms. Napier acted in bad faith when she failed to disclose the existence of the Phen-Fen Action, and that her claim of exemption should be denied as a result.

---

[20] *Ford*, 492 F.3d at 1156 (citations omitted).

8

## Conclusion

The Objection to Debtor's Amended Claim of Exemption filed by Steven W. Soulé, Trustee, is sustained.  Ms. Napier's claim of exemption in the Phen-Fen Action and the settlement proceeds therefrom is denied.  A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 4th day of February, 2008.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5121.4

9